UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JANE DOE,

          Plaintiff,                    Case No.
                                          Hon.

vs.

THE CITY OF DETROIT,
*a Michigan Municipal Corporation*,

          Defendant.
_____/
Carol A. Laughbaum (P41711)
Attorneys for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com
_____/

# COMPLAINT AND JURY DEMAND

Plaintiff, Jane Doe, by her attorneys Sterling Attorneys at Law, P.C., for her Complaint against Defendant, submits the following:

## JURISDICTION AND PARTIES

1. This is an action for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.,* and Michigan's Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, arising out of Plaintiff's employment relationship with Defendant.

2. Plaintiff Jane Doe is a citizen of Michigan and resides within the Eastern District of Michigan.

3. Due to the sensitive nature of this matter and Plaintiff's privacy interests, Plaintiff will be moving for an order allowing her to proceed with this case pseudonymously.

4. Defendant City of Detroit is a Michigan municipal corporation located within the Eastern District of Michigan.

5. The events giving rise to this cause of action occurred within the Eastern District of Michigan.

6. This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 USC 1331 (federal question) and 28 USC 1343 (civil rights).

7. Plaintiff timely files this lawsuit within ninety (90) days of receipt of her EEOC issued Notice of Right to Sue letter, which was mailed to her on or about March 27, 2018.

## BACKGROUND FACTS

8. Plaintiff Jane Doe was born biologically male.

9. Plaintiff Doe has multiple degrees.

10. In January 2016, Plaintiff Doe became employed by Defendant City of Detroit in a high-level position in the City's Office of Development and Grants.

11. At that time, Plaintiff Doe lived and presented as a male.

12. In approximately April 2016, Plaintiff Doe advised agents of Defendant City of Detroit that she would be undergoing sex reassignment surgery to reflect her gender identity, female.

13. At that time, Defendant City expressed support for Plaintiff.

14. In late May 2016, Plaintiff Doe began a medical leave for her first round of gender reassignment surgery.

15. In June 2016, Plaintiff Doe returned to work, presenting as a female, and with a different first name.

16. Plaintiff Doe legally changed her name, and legally changed her gender from male to female.

17. Soon after Plaintiff Doe's return to work, Plaintiff learned from her supervisor, Deputy CFO/Director of Grants Management Nichelle Hughley, that a complaint had been filed with respect to Plaintiff's attire and alleged violations of the City's dress code since Plaintiff's return from medical leave.

18. Subsequently, a second such complaint apparently surfaced, and was communicated to Plaintiff.

19. When Plaintiff Doe contacted the City's Human Resources Department for a copy of the dress code, that office confirmed that the City had no dress code.

20. In early November 2016, Plaintiff Doe took a medical leave for additional gender reassignment surgery.

21. Plaintiff Doe returned to work in early December.

22. On or about December 14, 2016, Plaintiff Doe discovered that the name plate outside her office door, which had been updated to reflect Plaintiff's new name and gender, had been defaced. "Mr." was scrawled over her first name in black permanent marker.

23. Plaintiff Doe reported the incident to Human Resources.

24. On or about December 16, 2016, Plaintiff Doe arrived at work to find what appeared to be a holiday gift bag on her desk.

25. Upon opening the bag, Plaintiff Doe found that it contained a dildo and a handwritten note. The note purported to quote a Bible verse, and stated it was an "abominton" [sic] for a man to "put on a woman's garment." The note further stated, "You were born a man. No make-up or weave will change that. Even getting rid of your Penis won't. Stop shaming yourself. We don't want People like you working here."

26. Plaintiff Doe reported the incident to Defendant's Human Rights Department, and on December 19, 2016 filed a Human Rights Discrimination and Harassment Complaint.

27. Plaintiff also requested that a lock be placed on her office door, and that cameras be installed to determine who was responsible.

28. Defendant City failed and refused to place a lock on Plaintiff's office door.

29. Defendant City failed and refused to install cameras.

30. Defendant City failed and refused to otherwise take prompt, effective remedial action to stop the harassment.

31. The efforts by Defendant City to confirm the identity of the harasser and put an end to his disturbing and illegal behavior were minimal and/or non-existent.

32. In addition, Plaintiff's supervisor began questioning Plaintiff Doe's attendance and specifically her absences due to medical appointments and procedures related to her transition. This was despite the fact that Plaintiff had previously been approved to take time off related to her transition, and the fact that Plaintiff endeavored to kept her time off to a minimum.

33. On May 8, 2017, Plaintiff Doe discovered a typewritten note in her employee mailbox, addressing her as "Mr." and using her prior (male) name, and which purported to cite a Bible verse. It said, "IF A MAN HAS SEXUAL RELATIONS WITH A MAN AS ONE DOES WITH A WOMAN, BOTH OF THEM HAVE DONE WHAT IS DETESTABLE. THEY ARE TO BE PUT TO DEATH; THEIR BLOOD WILL BE ON THEIR OWN HEADS."

5

34. Plaintiff Doe immediately filed a police report, and informed her supervisor that she did not feel safe coming to work.

35. Plaintiff Doe's supervisor directed her to return to work, stating that Plaintiff's concerns would be addressed at that time.

36. Plaintiff Doe returned to work on May 11, 2017, as directed by her supervisor.

37. On May 22, 2017, Plaintiff Doe received yet another note, which had been placed on her chair, containing another death threat. The note, which identified Plaintiff as "Mr." and used Plaintiff Doe's prior (male) name stated, "You were warned! Now I will show you better than I can tell you. GOD HAVE MERCY ON YOUR SOUL!"

38. Plaintiff Doe took the note to her CFO and attempted to speak with Human Rights and Human Resources.

39. On May 22, 2017, Plaintiff Doe also filed a complaint with the Equal Employment Opportunity Commission and the Michigan Department of Civil Rights.

40. On May 23, 2017 Plaintiff Doe filed a second Discrimination and Harassment Complaint with Defendant City's Human Rights Department.

41. Plaintiff's allegations included that her supervisor, Ms. Hughley, had failed to take proper precautions to ensure Plaintiff's safety at work and prevent further harassment.

42. Plaintiff Doe was assured that her allegations would remain confidential.

43. Instead, Human Rights Department staff shared Plaintiff's complaint allegations with Ms. Hughley, who admonished Plaintiff for being "thrown under the bus" by Plaintiff.

44. On or about May 24, 2017, Plaintiff Doe met with Defendant City of Detroit's Human Resources staff regarding the death threats and her extremely hostile and untenable work environment.

45. Defendant informed Plaintiff Doe that she had three options: keep working, take FMLA, or resign.

46. Plaintiff Doe experienced an increase in her already hostile work environment and retaliatory harassment following her Human Rights complaint implicating Hughley, with Hughley nit-picking Plaintiff's performance and retroactively denying Plaintiff Doe's vacation time, which Hughley had previously approved in writing.

47. Plaintiff was required to continue to work in an unlocked office, and was chastised for working with her door closed, which she did out of fear for her personal safety.

48. Plaintiff Doe reported the retaliatory harassment to Defendant's Human Resources Department.

49. Plaintiff began experiencing panic attacks due to her work environment, ongoing threats to her safety and life, and Defendant's failure and refusal to take prompt and effective remedial action.

50. Eventually, Plaintiff was moved to an office on another floor.

51. The identity of the harasser, a Manager with the City of Detroit, has long been known to Defendant, yet he remains employed with Defendant City in a high level position.

52. In fact, City employees have reported to Defendant's Human Resources staff vile and disturbing comments made by this individual, evidencing his hostility toward Plaintiff and her transition.

53. Plaintiff Doe has been required to attend high level meetings in which this individual has been in attendance.

54. On or about July 7, 2017, Defendant City, in response to a Channel 7 news story on Plaintiff Doe (in which Plaintiff Doe was identified pseudonymously and her face obscured) put out a statement containing false information regarding the efforts allegedly taken by the City to address Plaintiff's hostile work environment and death threats.

55. In addition, it was only after the Channel 7 story aired that Defendant City's Police Department contacted Plaintiff Doe to follow up on the police report she had filed two months earlier.

56. Throughout her employment with Defendant, Plaintiff has performed her job duties in a manner that has been satisfactory or better.

57. Plaintiff has been denied a promotion and marginalized, in retaliation for her protected activity.

58. In approximately October 2017, Ms. Hughley abruptly left her position with the City of Detroit.

59. Prior to leaving, Hughley reviewed Plaintiff Doe's performance very favorably.

60. Prior to leaving, Hughley expressed that Plaintiff Doe should be named as her (Hughley's) successor as Director of Grants Management, and if Plaintiff was not selected to fill that vacancy, it would be due to Plaintiff Doe's complaints.

61. Defendant subsequently named another individual, with less relevant experience than Plaintiff Doe, as Director of Grants Management.

62. Defendant's agents communicated to Plaintiff that the appointment of this individual was just interim, and that the position would be posted.

63. That has not occurred. Instead, that individual has upon information and belief been given that position permanently.

64. Defendant City by its agents has continued to marginalize Plaintiff Doe and her role at Defendant City.

65. Plaintiff Doe's hostile and retaliatory work environment is ongoing.

## COUNT I

*Sex Discrimination/ Hostile Work Environment in Violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act (Failure to Conform to Gender Norms)*

66. Plaintiff incorporates the preceding paragraphs by reference.

67. At relevant times, Plaintiff was an employee and Defendant was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC 2000-e *et seq.* and Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

68. Discrimination because of sex, which is prohibited by Title VII and Michigan's Elliott-Larsen Civil Rights Act, includes discrimination based on an employee's failure to conform to stereotypical gender norms.

69. Defendant, by its agents, discriminated against Plaintiff, harassed Plaintiff and subjected Plaintiff to a hostile work environment, which escalated to include death threats, based on her failure to conform to stereotypical gender norms.

70. Defendant, when put on notice of Plaintiff's extremely hostile work environment, failed to take prompt remedial action to end the harassment.

71. Defendant, by its agents, was predisposed to discriminate on the basis of sex, and acted in accordance with that predisposition.

72. The actions of Defendant by its agents were deliberate and intentional, and engaged in with malice, or with reckless indifference to the rights and sensibilities of Plaintiff.

73. As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff, she has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; severe mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment, and post-traumatic stress disorder; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT II

*Sex Discrimination/Hostile Work Environment in Violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act (Transitioning and Transgender Status)*

74. Plaintiff incorporates the preceding paragraphs by reference.

75. Discrimination because of sex, which is prohibited by Title VII and Michigan's Elliott-Larsen Civil Rights Act, inherently includes discrimination against an employee because of a change in his or her sex.

76. Discrimination because of sex, which is prohibited by Title VII and Michigan's Elliott-Larsen Civil Rights Act, includes discrimination against an employee because of his or her transitioning or transgender status.

77. Defendant, by its agents, discriminated against Plaintiff, harassed Plaintiff and subjected Plaintiff to a hostile work environment, which escalated to include death threats, based on her transitioning and transgender status.

78. Defendant, when put on notice of Plaintiff's extremely hostile work environment, failed to take prompt remedial action to end the harassment.

79. Defendant, by its agents, was predisposed to discriminate on the basis of sex, and acted in accordance with that predisposition.

80. The actions of Defendant by its agents were deliberate and intentional, and engaged in with malice, or with reckless indifference to the rights and sensibilities of Plaintiff.

81. As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff, she has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; severe mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment, and post-traumatic stress disorder; and the loss of the ordinary

pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT III

*Retaliation in Violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act*

82. Plaintiff incorporates the preceding paragraphs by reference.

83. Title VII and Michigan's Elliott-Larsen Civil Rights Act prohibit retaliation against a person because she has made a claim of sex discrimination or retaliation.

84. Plaintiff engaged in activity protected by Title VII and Michigan's Elliott-Larsen Civil Right Act when she made sex discrimination and retaliation complaints internally and with the Equal Employment Opportunity Commission and Michigan Department of Civil Rights.

85. Defendant's treatment, retaliatory harassment, and failure to promote Plaintiff was in violation of the anti-retaliation provisions of Title VII and Michigan's Elliott-Larsen Civil Rights Act.

86. The actions of Defendant by its agents were deliberate and intentional, and engaged in with malice, or with reckless indifference to the rights and sensibilities of Plaintiff.

87. As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff, she has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and

earning capacity; loss of the value of fringe and pension benefits; severe mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment, and post-traumatic stress disorder; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff Jane Doe demands judgment against Defendant as follows:

**A.  Legal Relief**

1. Compensatory damages in whatever amount she is found to be entitled;

2. Exemplary damages in whatever amount she is found to be entitled;

3. A judgment for lost wages and benefits in whatever amount she is found to be entitled;

4. An award of interest, costs and reasonable attorney fees; and

5. Whatever other legal relief appears appropriate at the time of final judgment.

**B.  Equitable Relief:**

1. An injunction out of this Court prohibiting any further acts of wrong-doing;

2. An award of interest, costs and reasonable attorney fees; and

3. Whatever other equitable relief appears appropriate at the time of final judgment.

## JURY DEMAND

Plaintiff Jane Doe, by her attorneys Sterling Attorneys at Law, P.C., requests a trial by jury.

        Respectfully submitted,

        STERLING ATTORNEYS AT LAW, P.C.

        By:  /s/Carol A. Laughbaum
             Carol A. Laughbaum (P41711)
             Attorneys for Plaintiff
             33 Bloomfield Hills Pkwy., Ste. 250
             Bloomfield Hills, MI 48304
             (248) 644-1500

Dated: April 25, 2018