Case 2:18-cv-11295-MAG-RSW   ECF No. 49-1, PageID.2536   Filed 03/04/20   Page 1 of 11
**EXHIBIT A**
Case 2:18-cv-11295-MAG-RSW   ECF No. 47   filed 02/19/20   PageID.2493   Page 1 of 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE,

        Plaintiff,                Case No. 18-11295

vs.                                    HON. MARK A. GOLDSMITH

THE CITY OF DETROIT,

        Defendant.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 34)**

Shortly after Jane Doe, proceeding pseudonymously, began working as the Assistant Director of Grants Management for Defendant City of Detroit, she took some time off to undergo sex reassignment surgery to reflect her gender identity, female. The Mayor and Doe's immediate co-workers were supportive of Doe during her transition. However, when she returned to work as Jane Doe, someone left her a gift bag with a sex toy and a hate-filled note. A few months later, she received another two notes containing threats of violence. Doe does not believe that her supervisors responded to the harassment and threats appropriately and eventually filed the present case against the City, alleging a hostile work environment and retaliation for filing complaints about the incidents. The City has moved for summary judgment. In the response brief, Doe fails to mount any legal argument to refute the City's motion. Because the City has met its burden of demonstrating entitlement to summary judgment, the City's motion is granted.

            **I.**        **BACKGROUND**

Doe began working as the Assistant Director of Grants Management for the City of Detroit in January 2016. Doe Dep., Ex. C to Def. Mot., at 15-16 (Dkt. 34-4). Shortly after starting in this

1

position, Doe met with the City's Director of Human Rights, Portia Roberson, and the City's LGBTQ liaison, Brad Dick, to discuss her plans to transition.  Id. at 16-17; Pl. Counter Stmt. of Material Facts ("CSMF") ¶¶ 7-9 (Dkt. 39).   Doe offered to resign her position because her first surgery was scheduled in May 2016, and she knew that she would need a significant amount of time off from work.  Doe Dep. at 16-19.  Roberson told Doe that she should not resign, and that the Mayor fully supported her transition.  Id. at 19.  Doe later discussed her transition with her support staff and her direct supervisor, Nichelle Hughley (Deputy Chief Financial Officer for Grants), who were all supportive.  Id. at 19-22.

Doe had not discussed her transition with anyone else with whom she worked prior to taking time off to have her surgery, and she recommended to Hughley that there should be some type of session while she was gone to prepare her co-workers for her return.  Id. at 20.  During Doe's absence, the City's Department of Civil Rights, Inclusion and Opportunity ("CRIO"), formerly the Human Rights Department, held an hour-long informational meeting with Doe's co-workers to discuss that an employee may be returning to work with a different appearance, and to review the City's policies on discrimination.  Dismuke Dep., Ex. R to Def. Mot., at 17-18 (Dkt. 34-19).  Doe returned to work in June 2016.  Doe Dep. at 22.  She testified that her overall experience returning to work was pleasant, id. at 22-23, but not entirely uneventful.  Hughley informed Doe that two complaints had been filed about Doe's work attire.  Id. at 27-28.  Neither Hughley nor the Human Resources Department representative found anything inappropriate about Doe's attire, and her attire was not in violation of her department's dress code.  Id. at 27-29.

Doe had her second surgery in October 2016.  Id. at 23.  She returned to work on a limited basis in December 2016.  Id.  On December 14, 2016, when Doe arrived at work, she found that her door's name plate had been defaced by someone who wrote the word "Mr." over her name.

Def. Stmt. of Material Facts ("DSMF") ¶ 24.  Doe's administrative assistant immediately removed the defaced name plate.  Doe Dep. at 30.  Her assistant cleaned the name plate and placed it back on her door.  Id. at 31.  Two days later, when Doe arrived at work on Friday morning, she found a gift bag on her desk.  DSMF ¶ 25.  Inside the bag, Doe found a sex toy and a hand-written note.  Id. ¶ 27.  The note said the following:

> Deuteronooney [sic] 22:5
>
> The woman shall not wear that which pertaineth unto a man, neither shall A men [sic] put on a womans Garment for All that Do So Are Abominton [sic] Unto the Lord thy God.  You were born a Man, No make-up or weave will change that. Even getting rid of your Penis wont. Spot [sic] shaming Yourself. We don't wont [sic] People like you working Here.

CSMF ¶ 27.  Doe spoke with Hughley, Lesa Kent (then CRIO Director), and Roberson about the incident, and requested locks be placed on her door and a hidden camera installed.  Doe Dep. at 51.

Doe filled out a CRIO complaint when she returned to work the following Monday.  Id. at 34-36.  CRIO immediately began an investigation.  Id. at 51.  CRIO sent out an email with the City's zero-tolerance policy, held a meeting where hand-writing samples were collected, and reminded employees that harassment is a terminable offense.  Id. at 48-50.  It also conducted interviews with employees, including Charles Allen, who was the employee who made the complaints with respect to Doe's attire.  Allen Dep., Ex. N to Def. Mot., at 12, 15-19 (Dkt. 34-15).  Shortly thereafter, the department shut down for the holiday break.  Doe Dep. at 51.  When Doe returned in January 2017, there were no locks on her door and no cameras installed.  Id. at 52.  In February, she received the final CRIO report stating that the perpetrator of the harassment could not be determined.  Id.

No further incidents occurred until May 2017. On May 8, 2017, Doe received a typewritten note stating the following:

> MR. [Doe's prior male name]
>
> LEVITICUS 20:13
>
> IF A MAN HAS SEXUAL RELATIONS WITH A MAN AS ONE DOES WITH A WOMAN, BOTH OF THEM HAVE DONE WHAT IS DETESTABLE. THEY ARE TO BE PUT TO DEATH; THEIR BLOOD WILL BE ON THEIR OWN HEADS

CSMF ¶ 36. Doe immediately left work and filed a police report. Doe Dep. at 54-55. Two weeks later, Doe found a large-font typewritten note on her office chair stating the following:

> **Mr. [Doe's prior male name]**
>
> **You were warned! Now I will show you better than I can tell you. GOD HAVE MERCY ON YOUR SOUL!!**

Id. ¶ 38. After the May 22 note was discovered, Doe was temporarily relocated to another floor. DSMF ¶ 41. In June, locks and cameras were installed on the floor where Doe's office was located. Id. Doe was returned to her office after the locks and cameras were installed. Id. ¶ 42.

Although the perpetrator of the harassing incidents was never identified, there is circumstantial evidence that it was Charles Allen, Doe's counterpart in the Office of Grants Accounting. Allen's subordinates reported him for making disparaging statements about Doe, including an incident where Allen called his staff to look at Doe's Facebook page while he made demeaning remarks. Doe Dep. at 40. Allen was placed on a three-day suspension for conduct unbecoming a supervisor/manager. DSMF ¶ 60. Doe later learned that Allen had been the person who had made the two complaints about her work attire. Doe Dep. at 38-39. Allen was later moved to another floor, but the reasons for the move are not clear. Id. at 46. Neither the City nor the Detroit Police Department has been able to tie Allen to the hateful and harassing incidents.

Case 2:18-cv-11295-MAG-RSW ECF No. 49-1, PageID.2540 Filed 03/04/20 Page 5 of 11
**EXHIBIT A**
Case 2:18-cv-11295-MAG-RSW ECF No. 47 filed 02/19/20 PageID.2497 Page 5 of 11

Hughley left her position as Deputy Chief Financial Officer for Grants in October 2017. Hughley Aff., Ex. G to Def. Mot., ¶ 13 (Dkt. 31-7). Prior to Hughley's departure, discussions were underway to merge the Office of Grant Management and the Office of the Chief Development Officer ("OCDO"). DSMF ¶ 64. Hughley's former position, at least in name, was eliminated. Id. ¶ 67. Two new positions were created: Deputy Director of Development, and Deputy Director of Grants. Id. ¶ 68. The Deputy Director of Grants (essentially the same position previously held by Hughley) was initially a civil service position and open to applications. Id. ¶ 70. Doe applied for the position. Id. Later, the position was made an appointment-based position, with the appointment to be made by then Chief Financial Officer John Hill. Id. ¶ 72. Hill named Katerli Bounds the new Deputy Director of Grants. Id. ¶ 72. As of April 2019, Doe has continued in her Assistant Director position under Bounds's direct supervision. ¶¶ 72-73.

Doe filed a civil rights complaint alleging a hostile work environment and retaliation. The City now seeks summary judgment on Doe's claims under Federal Rule of Civil Procedure 56.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving

5

Case 2:18-cv-11295-MAG-RSW ECF No. 49-1, PageID.2541 Filed 03/04/20 Page 6 of 11
**EXHIBIT A**
Case 2:18-cv-11295-MAG-RSW ECF No. 47 filed 02/19/20 PageID.2498 Page 6 of 11

party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." Horton v. Potter, 369 F.3d 906, 909 (6th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

### III.  ANALYSIS

Defendants make two arguments in support of their motion for summary judgment: (1) Doe failed to make a prima facie case of hostile work environment under Title VII and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"); and (2) Doe has failed to establish a prima facie case of retaliation. Without explanation, Doe asserts that this matter is fact bound. See Pl. Resp. at 30-32 (Dkt. 39). Although Doe has not made a coherent argument, the burden remains with the City to demonstrate there are no genuine disputes of material facts that would preclude summary judgment. The City's arguments will be taken in turn.

**A. Hostile Work Environment**

The City argues that Doe has failed to establish a prima facie case of a hostile-work-environment claim, because she cannot show that the City failed to act on the discriminatory actions taken against her. Def. Mot. at 21. The City's argument is sound.

Title VII makes it is unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges or employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986)) (some internal quotations omitted). The Supreme Court held in Price Waterhouse v. Hopkins that sex

discrimination under Title VII bars gender discrimination, including discrimination on the basis of sex stereotypes. 490 U.S. 228, 250-251 (1989). Sex stereotyping includes discrimination on the basis of transgender and transitioning status. Equal Emp't Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc., 884 F.3d 560, 574-575 (6th Cir. 2018).[1]

To succeed on a hostile-work-environment claim, a plaintiff must demonstrate that "(1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [sex], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act." Waldo v. Consumers Energy Co., 726 F.3d 802, 813 (6th Cir. 2013) (quoting Williams v. CSX Transp. Co., 643 F.3d 502, 511 (6th Cir. 2011)). Under Michigan law, the elements are substantially the same. See Quinto v. Cross & Peters Co., 547 N.W.2d 314, 319-320 (Mich. 1996). Defendants are contesting only the fifth element.

To satisfy the fifth element, Doe must show that her employer "'tolerated or condoned the situation' or 'that [her] employer knew or should have known of the alleged conduct and failed to take prompt remedial action.'" Jackson v. Quanex Corp., 191 F.3d 647, 659 (6th Cir. 1999) (quoting Davis v. Monsanto Chem. Co., 858 F.2d 345, 349 (6th Cir. 1988)). "Generally, a response is adequate if it is reasonably calculated to end the harassment." Id. at 663. "Steps that would 'establish a base level of reasonably appropriate corrective action' may include promptly initiating an investigation to determine the factual basis for the complaint, 'speaking with the specific

---

[1] The Supreme Court is considering whether Title VII prohibits discrimination against transgender people based on (1) their status as transgender or (2) sex stereotyping under Price Waterhouse v. Hopkins. See R.G. & G.R. Harris Funeral Homes, Inc. v. E.E.O.C., – U.S. – , 139 S. Ct. 1599 (2019). Because Defendants' motion does not turn on whether Doe is a member of a protected class, the Supreme Court's forthcoming decision in Harris Funeral Homes will not impact the resolution of the present motion.

Case 2:18-cv-11295-MAG-RSW ECF No. 49-1, PageID.2543 Filed 03/04/20 Page 8 of 11
**EXHIBIT A**
Case 2:18-cv-11295-MAG-RSW ECF No. 47 filed 02/19/20 PageID.2500 Page 8 of 11

individuals identified by [the complainant], following up with [the complainant] regarding whether the harassment was continuing, and reporting the harassment to others in management.'" Waldo, 726 F.3d at 814 (quoting West v. Tyson Foods, Inc., 374 F. App'x 624, 633 (6th Cir. 2010)).

The City took prompt remedial action calculated to end the harassment. After Doe submitted a complaint reporting the harassment, CRIO immediately began an investigation and sent out an email with the City's zero-tolerance policy. It interviewed employees (including Allen), conducted a meeting where handwriting samples were collected, and reminded employees that harassment of the kind aimed at Doe is a terminable offense. Doe received the final CRIO report informing her that the identity of her harasser had not been discovered. And it appears that every manager, and perhaps every employee, was made aware of the harassment. These are precisely the type of steps the Sixth Circuit has identified as establishing a base level of reasonably appropriate corrective action. See Waldo, 726 F.3d at 814.

Doe's response to the City's summary judgment motion is woefully inadequate. After setting forth the legal standard and criticizing the City for its "terse" argument, counsel makes the following cursory argument:

> As the facts of this case demonstrate, the harassment directed at Doe was not addressed for many, many months allowing the vile behavior and threats directed at Doe to escalate. (Plaintiff's Additional Facts ¶¶ 17-19, 23-28, 31-33, 36-38, 42-44, 46-48, 57, 70-72, 78, 84, 87).
>
> At a very minimum, a question of fact exists as to the promptness and effectiveness of Defendant's actions. [citing cases].

Resp. at 30. However, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Such perfunctory arguments are deemed waived. McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997). Doe

8

Case 2:18-cv-11295-MAG-RSW   ECF No. 49-1, PageID.2544   Filed 03/04/20   Page 9 of 11
**EXHIBIT A**
Case 2:18-cv-11295-MAG-RSW   ECF No. 47   filed 02/19/20   PageID.2501   Page 9 of 11

has done nothing more than point to some facts and hope that the Court will spin them into a legal argument. But the Court cannot work from whole cloth to advocate on behalf of a party. Doe has waived any argument in support of her hostile-work-environment claims.

The City's motion will be granted on the hostile-work-environment claims because the City has met its burden, and Doe has waived any argument in defense.

### B. Retaliation

The City argues that Doe has failed to establish a prima facie case of retaliation because she has not suffered an adverse employment action and has not established causation. Mot. at 21-23. As with her hostile-work-environment claim, Doe does not address the City's arguments.

To establish a prima facie case of retaliation, a plaintiff must establish that "(1) [s]he engaged in an activity protected by Title VII; (2) the defendant knew [s]he engaged in this protected activity; (3) thereafter, the defendant took an employment action adverse to h[er]; and (4) there was a causal connection between the protected activity and the adverse employment action." Smith v. City of Salem, Ohio, 378 F.3d 566, 570 (6th Cir. 2004). The City concedes the first two elements, but it disputes the last two.

The City argues that any actions taken by Hughley, such as revoking a vacation request that was reapproved the following day, are not materially adverse actions. Def. Mot. at 23. An adverse action is defined as a "materially adverse change in the terms and conditions of [plaintiff's] employment." Smith, 378 F.3d at 575 (quoting Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999)). "A 'mere inconvenience or an alteration of job responsibilities' or a 'bruised ego' is not enough to constitute an adverse employment action." White v. Burlington N. & Santa Fe R. Co., 364 F.3d 789, 797 (6th Cir. 2004) (quoting Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876,

886 (6th Cir. 1996)). The City argues that the employment actions allegedly taken against Doe do not rise to the level of materially adverse actions.

The City also argues that Doe cannot establish causation between her CRIO complaints and Hill's decision a year later to appoint Bounds, rather than Doe, to the Deputy Director of Grants position. Def. Mot. at 22. Temporal proximity sometimes can satisfy the causation standard at the summary judgment stage. But the proximity of one to the other must be "'very close in time.'" Montell v. Diversified Clinical Servs., Inc., 757 F.3d 497, 505 (6th Cir. 2014) (quoting Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008)). "[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." Mickey, 516 F.3d at 525 (citing Little v. BP Exploration & Oil Co., 265 F.3d 357, 365 (6th Cir. 2001)). The City argues that Doe has shown no more than temporal proximity between her CRIO complaints and any alleged adverse employment actions.

In the face of the City's argument, Doe makes only conclusory responses:

> Plaintiff presents overwhelming evidence of a causal connection between her protected activity and retaliatory harassment by Hughley and Bounds (Plaintiff's Additional Facts, ¶¶ 53, 54, 55, 56 a-h, 116. 117-122, 123, 124-125, 126-128).
>
> Plaintiff also presents ample evidence of a causal connection between her protected activity, and inability to be promoted/transferred (Plaintiff's Additional Facts, ¶¶ 97, 98-1-5, 108, 108-115, 129-131).
>
> Finally, Defendant's discussion on page 23 of its Brief in which it posits alternative theories, other than retaliation, for why Doe has not been able to obtain a promotion/transfer with Defendant only confirms that questions of fact exist as to Plaintiff's retaliation claim, rendering summary judgment inappropriate.

Resp. at 32. Again, Doe's response to the City's motion is bereft of any legal argumentation. Therefore, Doe has waived any arguments in opposition to the City's motion for summary judgment on her retaliation claim. See McPherson, 125 F.3d at 996 ("Issues adverted to in a

Case 2:18-cv-11295-MAG-RSW ECF No. 49-1, PageID.2546 Filed 03/04/20 Page 11 of 11
**EXHIBIT A**
Case 2:18-cv-11295-MAG-RSW ECF No. 47 filed 02/19/20 PageID.2503 Page 11 of 11

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation and marks omitted)).

The City's motion will be granted on Doe's retaliation claim because the City has met its burden of establishing that Doe has not suffered a materially adverse employment action, and that even if she had, she cannot establish causation between her CRIO complaints and Hill's decision to appoint Bounds to the Deputy Director of Grants position. Additionally, Doe has waived any argument in opposition to the City's motion.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment (Dkt. 34) is granted.[2]

SO ORDERED.

Dated: February 19, 2020       s/Mark A. Goldsmith
       Detroit, Michigan      MARK A. GOLDSMITH
                                 United States District Judge

---

[2] Additionally, because the City's motion for summary judgment is granted, the City's motion to strike witness Renachantel McClain (Dkt. 35) is denied as moot.