```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3

 4    JANE DOE,

 5                    Plaintiff,

 6                                          Case No. 18-cv-11295
      -v-
 7

 8    THE CITY OF DETROIT,

 9                    Defendant.
      _____/
10

11

          PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM JANE DOE
12
                   BEFORE HONORABLE MARK A. GOLDSMITH
13
            Detroit, Michigan, Thursday, July 12th, 2018.
14

15

16    APPEARANCES:

17    FOR THE PLAINTIFF:      CAROL A. LAUGHBAUM
                              Sterling Attorneys at Law, P.C.
18                            33 Bloomfield Hills Parkway
                              Suite 250
19                            Bloomfield Hills, MI 48304

20
      FOR THE DEFENDANT:      TIFFANY A. BOYD
21                            2 Woodward Avenue
                              Suite 500
22                            Detroit, MI 48226

23

24    David B. Yarbrough, CSR, RMR, FCRR
      Official Court Reporter
25    (313) 234-2619
```

TABLE OF CONTENTS

                                                                PAGE

WITNESSES:

NONE




















                              EXHIBITS


NONE

1          Detroit, Michigan.

2          Thursday, July 12th, 2018.

3          At or about 2:18 p.m.

4                    --    ---    --

5          THE CLERK OF THE COURT:  Please rise.  The United

6    States District Court for the Eastern District of Michigan is

7    now in session, the Honorable Mark Goldsmith presiding.  You

8    may be seated.  The Court calls case number 18-11295, Doe

9    versus the City of Detroit.  Counsel, please state your

10   appearances for the record.

11         MS. LAUGHBAUM:  Good afternoon, your Honor.  Carol

12   Laughbaum on behalf of the plaintiff.

13         MS. BOYD:  And good afternoon, your Honor.  Tiffany

14   Boyd on behalf of the city of Detroit.

15         THE COURT:  All right.  Good afternoon.  We have

16   plaintiff's motion to proceed under a pseudonym, so I've read

17   your submissions.  Ms. Laughbaum, you want to proceed?

18         MS. LAUGHBAUM:  Yes.  Thank you, your Honor.  So this

19   is plaintiff's motion to continue to proceed in this case under

20   the pseudonym Jane Doe to protect her privacy rights and

21   personal safety given the fact that she is transgender and

22   already received repeated death threats because of her status

23   as a transgender woman.  To my knowledge, there's no case law

24   where a motion of this type involving a transgender person

25   seeking to shield his real name in court filings has been

1    denied.  I have cited three cases where the plaintiff has been

2    granted this type of relief, all involving transgender

3    individuals.  That would be Doe v. Blue Cross Blue Shield of

4    Rhode Island, Doe v. Frank and Highland v. Local School

5    District v. US Department of Education as well as varying other

6    cases, not -- various other cases not specifically involving

7    transgender persons, but involving exotic dancers or

8    individuals objecting to the Bible and religion being taught in

9    public schools.

10              THE COURT:  Pardon me for interrupting.  So it's my

11   understanding the City knows who this person is.

12              MS. LAUGHBAUM:  Right.

13              THE COURT:  So the City knows this person's legal

14   name.

15              MS. LAUGHBAUM:  Correct.

16              THE COURT:  Umm --

17              MS. LAUGHBAUM:  Well, let me correct that.  Those

18   within the City that have a need to know know.  I think, you

19   know, the key players obviously know who she is.  She filed her

20   internal human rights complaint and her EEOC charge and her

21   police report under her real name.  The concern is that if her

22   name is in the public record, there may be copycat, you know,

23   people out there --

24              THE COURT:  Well, I'll get to that in a moment.

25              MS. LAUGHBAUM:  Sure.

1          THE COURT:  I'm interested in what the City knows.

2     So certainly the City attorneys --

3          MS. LAUGHBAUM:  They've known for over a year,

4     correct --

5          THE COURT:  -- know the name of this person.  So if I

6     were to grant this motion, I'm just wondering how we would be

7     proceeding here.  If the City wants to subpoena records from

8     whomever, would any order I would be granting here stop the

9     City from doing that?

10          MS. LAUGHBAUM:  Well, no, I envision -- no, I

11     envision entering a protective order that basically provides

12     that anything with the plaintiff's name on it, if any documents

13     are filed with the Court that include the plaintiff's real

14     name, those would be redacted.  I'm happy to work with the City

15     attorneys to, you know, get subpoenas out or I can get the

16     records on their behalf and provide them.

17          I'm not trying to shield any substantive information

18     or any discovery from coming out, you know, that's reasonable

19     in any normal employment case.  It's just a matter of keeping

20     her name out of the public record, umm, that's my, that's my

21     concern and that to protect her from people within the City

22     that don't need to know this information, but might be

23     sympathetic to or harass her or people in the public at large,

24     prospective employers who have no legitimate reason to know her

25     true name.

1          None of the facts, your Honor, I'm trying to shield,

2     no discovery I'm trying to shield.  It's just the name of my

3     client being put out there and, you know, subject to a Google

4     search by anybody with a, you know, smart phone or computer.

5          THE COURT:  Now these death threats, are they from

6     people that your client can identify or are these anonymous

7     threats?

8          MS. LAUGHBAUM:  Well, technically they're anonymous.

9     I think it's almost a fore-gone conclusion who the actual

10    person, who the source of these threats is and my allegations

11    in the Complaint sort of point that out.  I think it's a, you

12    know, an open secret at the City who it is.  There's an

13    individual, a high-level manager who has openly made comments

14    to others about how he thinks my client's transition is

15    disgusting and is believed to be the source of the notes and

16    that I presume will come out in discovery, but --

17         THE COURT:  You're saying this person is the author

18    of the death threats?

19         MS. LAUGHBAUM:  We believe so.  There were three

20    different notes that sort of increasingly ominous threats

21    against her life.  There will be blood on your heads -- on your

22    hands.  Umm, I have exact language here.

23         THE COURT:  Does this person know about this lawsuit?

24         MS. LAUGHBAUM:  I, I'm not aware.  I don't know.  I

25    believe they're still, you know, employed by the City and this

1   is somebody my client actually at least in the past and I think

2   continues to have to interact with on a regular basis.  They're

3   in the same meetings, umm, at times, umm, but the last note

4   was --

5           THE COURT:  So keeping your client's name out of the

6   paper would protect her from whom exactly?

7           MS. LAUGHBAUM:  Well, it would protect her from, I

8   mean, I can't protect her, I mean, part of the case is that the

9   City has already failed to protect her from whoever this, you

10  know, disturbed individual within the City is.  I'm trying to

11  avoid, you know, a copycat situation or others getting a hold

12  of her name and deciding, you know, they're like-minded and

13  they also wish her harm because of her status, so, you know, I

14  agree with you that the ship has sailed as far as her harasser,

15  he obviously knows who she is and the people in the government

16  that have been involved in this case and have presumably

17  investigated this case obviously, but the people that have a

18  need to know already need to know so any further disclosure of

19  her name would only be to people that have no legitimate need

20  to know or members of the public, prospective employers, you

21  know, et cetera, et cetera and I think this case fits squarely

22  within the Porter factors, that's the seminal Sixth Circuit

23  case and in particular Porter factor number two and these are

24  factors under which privacy interests can outweigh the

25  presumption of open judicial procedures.  Porter factor number

1   two is whether prosecution of the suit will require the

2   plaintiffs to disclose information of the utmost intimacy which

3   is clearly the case here.

4        Your Honor, the Doe v. Blue Cross Blue Shield of

5   Rhode Island case has particularly apt language and rationale

6   for why granting a transgender plaintiff's motion to proceed

7   under a pseudonym is appropriate and this is back, this case is

8   from '92, but let me just read some of the language and I'm

9   reading from 794 Fed. Supp, beginning on page 74.  The most

10  common instances and it's talking about where anonymity is

11  granted, are cases involving abortion, mental illness, personal

12  safety, homosexuality, transsexuality and illegitimate or

13  abandoned children in welfare cases.  The common thread running

14  through these cases is the presence of some social stigma or

15  the threat of physical harm to the plaintiffs attaching to

16  disclosure of their identities in the public record.

17        In this case, these threats came from inside City

18  Hall.  The first one was a note that said it is an abomination

19  for a man to put on a woman's garment, you were born a man, no

20  makeup or weave will change that, even getting rid of your

21  penis won't, stop shaming yourself, we don't want people like

22  you working here.  The second note included if a man has sexual

23  relations with a man as one does with a woman, both of them

24  have done what is detestable, they're to be put to death, their

25  blood will be on their own heads and finally you were warned,

1    now I will show you better than I can tell you, God have mercy

2    on your soul.

3           So the point, your Honor, is that these threats are

4    very real.  They're not illusory.  They're not speculation and

5    the plaintiff and the defendants have the interest in this not

6    escalating and some other disturbed individual either at the

7    City or in the public gets a hold of my client's real name and

8    decides that they, they wish her harm.

9           The threats in this case, you know, I'd like to

10   contrast those with those in the Porter case.  Remember the

11   Porter case was the case where plaintiffs were challenging the

12   teaching of the Bible in the public schools and the threats in

13   that case were published in a local newspaper and they were if

14   I knew your name, I would tell you what I thought of you.

15   Those threats which are obviously less ominous than the threats

16   in my case were found sufficient to warrant the protection of

17   allowing the plaintiff to proceed under pseudonym in that case,

18   so I'm not sure why the City wouldn't want to protect this

19   person's identity.  It's in everyone's best interest.  By

20   fighting this, if successful, the City is potentially just

21   exposing themselves to additional liability in this case.  It

22   makes no sense and, you know, unfortunately it smacks of

23   retribution or retaliation.

24          There is zero prejudice to defendants if this motion

25   is granted.  As I said, she's already used her name with the

1    people that need to know and --

2         THE COURT:  Well, they claim that they're going to be

3    hindered somehow in pursuing their defense of the case.

4         MS. LAUGHBAUM:  Well, I think I've addressed every

5    concern that they've raised.  The subpoenaing records, I will

6    make sure they get all relevant records they want.  I'm not

7    saying we can't utter her name in this litigation, I'm just

8    saying let's not file it in the public record, that's it, so I

9    don't understand how there's prejudice in the least.  In the

10   cases I've cited the courts have agreed that, you know, this is

11   the proper way to proceed and the parties can work out a

12   protective order that, you know, protects everyone's interests.

13        THE COURT:  So if they take a deposition of someone,

14   I assume they can ask about this person by name at a

15   deposition.

16        MS. LAUGHBAUM:  Sure and I would ask only -- I would

17   hope -- I would like the protective order to have a provision

18   in it saying in essence if we're filing dep transcript on the

19   court docket, we will, you know, take out the plaintiff's name.

20   So I'm not, you know, substantively everything is public except

21   the plaintiff's real name and that's it, so --

22        THE COURT:  Okay, I understand.

23        MS. LAUGHBAUM:  Thank you.

24        THE COURT:  Thank you.  All right, let's hear from

25   the City.

1          MS. BOYD:  Good afternoon, your Honor.

2          THE COURT:  Hello.

3          MS. BOYD:  It is the City's position that as you know

4     there's a strong presumption in favor of having open judicial

5     proceedings and identifying parties is part of that open

6     proceeding.  To that end, the courts have only found that it is

7     in exceptional cases where a plaintiff may proceed anonymously.

8     To that end, the plaintiff must present a compelling interest

9     in overcoming that presumption in order to proceed.  We do not

10    believe that the plaintiff has met that burden in this case --

11         THE COURT:  Well, what about the death threats?

12         MS. BOYD:  The threats that she allege are making, it

13    sounds like they're mostly internal.  That's the only thing

14    that she's put on the record are internal threats that are the

15    very issue of this case.  The last threat that she mentioned in

16    her Complaint occurred in May have 2017, your Honor.  That was

17    over a year ago.  Since then, the complainant has -- the

18    plaintiff, excuse me, has been working in the same department

19    with those same people among those who she's alleging made

20    those threats for over a year.  There have been no further

21    allegations of any threats since then.  The City has installed

22    cameras and locks on the office doors up there.  She is --

23    there's nothing else in the record outside of those threats

24    where she's saying the threats have come from.  They've all

25    come from the internal threats and the City has cameras and

1   locks on the doors and she's not making any allegations that

2   nothing has happened in the year since then.

3           THE COURT:  Let's talk about the prejudice.  What

4   specific prejudice can you identify?  You talked about in your

5   papers about subpoenaing records, but you've heard plaintiff's

6   counsel say she doesn't have any objection to the City getting

7   regards using this person's real name.  Plaintiff's only

8   request is that her name be kept out of what's publicly filed.

9   So if you're able to use her name to get records, if you can

10  ask witnesses at a deposition about her using her name, what

11  exactly is the prejudice then to the City?

12          MS. BOYD:  Well, she's offered to get documents for

13  us and I submit that we should not be held captive to

14  plaintiff's counsel obtaining documents.  We should be able --

15  that we would ordinarily be able to get on our own via

16  subpoena.  Also there's witnesses and people that we need to

17  talk to, yes, use her name, but we can't control if those

18  witnesses go out and mention, we can't control those things so

19  we would automatically be in violation of that order.  Also, we

20  need to be able to use her name in an investigation.

21          THE COURT:  Well, again I don't hear the plaintiff

22  saying that you couldn't use her name in doing your

23  investigation, it's just whatever gets publicly filed in a case

24  would not reveal her name, so if there were motions filed, the

25  caption wouldn't reflect her name, the body of the submission

1   wouldn't reflect her name, but whatever you do behind the

2   scenes to prepare your defense, I'm hearing plaintiff's counsel

3   say there's no objection to you using this person's real name

4   so again I'm trying to understand how the City is going to be

5   handicapped in some way in preparing its, its defenses to this

6   case.

7           MS. BOYD:  Because what she's asking us to do is

8   contain the use of the plaintiff's name and I don't see how we

9   will be able to do that 'cause if someone is --

10          THE COURT:  Well, let's say you want to find out more

11  about her medical history, maybe that bears on some claim here

12  of mental distress, so getting the records from any, say,

13  mental health providers you'd have to use this person's name

14  and I'm hearing the plaintiff's counsel telling us she has no

15  objection to that.  If you needed to subpoena records from, I

16  don't know, other employers, former employers, where ever

17  you're going to be looking for your facts, you're going to be

18  able to use her name on those subpoenas to get her records.  So

19  again I'm trying to find out as a practical matter where's the

20  handicap to the City here?

21          MS. BOYD:  May I have one moment, your Honor?

22          THE COURT:  Yes, go ahead.

23          (Pause)

24          MS. BOYD:  Your Honor, so outside of obtaining any

25  records, there is public perception which is part of our

1    defense as well.  The City will be out there.  There's people

2    who will be named and their names will be out there and they

3    will withstand certain scrutiny.  This case is going to garner,

4    whether she's named or not, garner scrutiny from the LGBT

5    community and things in the City is out there and we're having

6    to have under scrutiny while she's hiding behind the Jane Doe

7    so to speak and will not be under the same scrutiny.  Jury pool

8    sees this, they're only looking at the City and our side and

9    scrutinizing our side and they won't be able to scrutinize her.

10          THE COURT:  I'm sorry, who will not be able to

11   scrutinize her?

12          MS. BOYD:  The public.  This is going to be a public

13   case.  LGBT community is very strong, they're out there and

14   jury pools could potentially be tainted 'cause they're only

15   hearing one side that the City did this, the City did that

16   while she's able to hide her hand behind being Jane Doe.  So

17   even outside of the record --

18          THE COURT:  Well we're not going to seat jurors who

19   know anything about this case, are we?

20          MS. BOYD:  It's been in the paper.  It's been in the

21   paper that this has been filed against the City.

22          THE COURT:  I know, but we're probably at least a

23   year and-a-half to two years or more away from a trial, right?

24          MS. BOYD:  Even so, your Honor, this is a hot-button

25   issue --

1          THE COURT:  If we get somebody in a jury pool that

2     says that he or she knows about this case, we're probably not

3     going to put that person on this jury, are we?  We're going to

4     want jurors who know nothing about this case, right?

5          MS. BOYD:  But I don't see -- it's already been in

6     the papers.  We can't control whether people reading the papers

7     have formulated their own opinion of it.  That's something that

8     we can't control --

9          THE COURT:  Well, what --

10         MS. BOYD:  -- and she's gone to the papers herself,

11    even though she's done it anonymously, but she's identified

12    herself as a city employee working in the finance department.

13    So whatever fear that she's having, she's gone to the media

14    herself and put it in the media even before filing this case.

15         THE COURT:  But the media have not revealed her name;

16    is that right?

17         MS. BOYD:  To my understanding, know they have not,

18    but the markers that have been given, an employee working in

19    the City of Detroit office of finance grants management,

20    there's not too many people.  That's something that's a

21    FOIA-able.  They can FOIA the names of those employees.

22         THE COURT:  Well, I'm not sure the implications for

23    the media are really for me to worry about other than your

24    concern about juror bias, but it almost sounds like you want to

25    have your shot at influencing the jury pool as much as she

1    apparently according to your view of the world is trying to

2    influence the jury pool, but putting all that aside, let's

3    assume the City wanted to rebut whatever she's putting out

4    there; according to you she's putting something out there that

5    the City disagrees about.  What stops you from refuting what

6    she says in the media if that's what you want to do, but just

7    not mention her name?  If you want to say her charges are

8    unfounded, if you want to lay out your defenses, whatever they

9    might be, what would stop you from doing that other than you

10   can't say what her name is?

11        MS. BOYD:  We should be able to identify her in the

12   same way that she's identifying our employees and having their

13   names out there as having allegedly taking these actions.

14        THE COURT:  Um-hmm.

15        MS. BOYD:  And then aside from the detriment, she has

16   the burden of proving a compelling interest for this Court to

17   grant the motion and it's our position that she has not done

18   so.  In looking at the cases that she cited where it was

19   granted, I read Doe v. Frank and unless I'm reading the wrong

20   one, that one dealt with alcoholism and did not deal with a

21   transgender issue.

22        In regard to the Blue Cross issue that she cites from

23   1992, there was actual evidence in the record of harm that that

24   person had suffered from identifying as trans.  I believe that

25   person had a business and they had actually lost business once

1   people were able to find out that they were transgender.  I

2   would also note that that case is from 1992 and while we may

3   not necessarily be where we need to be this day and age, but I

4   highly doubt the City of Detroit was having Pride Week back in

5   1992.  I believe it's a different, umm, there's a different

6   circumstance.  There's a different society than that took place

7   in 1992.

8          Another thing I would note, her other case that she

9   indicate of Highland v. Local School, that was a minor child in

10  that instance where it was granted.  It was an 11-year-old

11  transgender child.  There was differences in the record.  In

12  looking at Doe v. Stigal, the Court noted that there was

13  evidence of open hostility towards the plaintiff's views in the

14  record.  Again citing in the Porter case, there was evidence in

15  the record, I believe plaintiff's counsel even cited it where

16  there were letters written said if I find out who you are,

17  we're going to do this.  All of those things are absent from

18  this case.

19         All she's alleging are internal alleged threats that

20  she's alleging that are at the issue of this case, none of

21  which have taken place in over a year.  There needs to be

22  something more than just citing threats that are over a year

23  old at this point especially after the City has taken actions,

24  put locks on the doors and installed cameras to prevent any of

25  that from happening and so far haven't heard plaintiff say

1    anything has happened since then, it's worked.

2              THE COURT:  Okay.  Anything else?

3         MS. BOYD:  No.

4              THE COURT:  All right, thank you.  Anything else, Ms.

5    Laughbaum?

6              MS. LAUGHBAUM:  Nothing unless the Court has further

7    questions for me.

8              THE COURT:  Well, there was an argument made here by

9    Ms. Boyd about the plaintiff sort of having something of a free

10   shot in that she could critique or criticize City people by

11   name, but the City could not return the fire.  What's your

12   response to that?

13             MS. LAUGHBAUM:  Well, I guess number one, that has

14   not been deemed a legitimate issue in any of the other cases

15   that we've cited to the Court and number two, there's nothing

16   to prevent the City from moving for a protective order.  If

17   they feel that they have some, you know, privacy interest that

18   need to be shielded, so, you know, they're free to do that.

19             THE COURT:  A protective order in the sense of

20   preventing her from commenting publicly on the case?

21             MS. LAUGHBAUM:  No, if they're seeking to shield

22   names, I mean, if tit for tat, if that's what they're worried

23   about that my person's name won't be out there, but theirs

24   will, you know, I mean, if that's -- I don't know that that's a

25   legitimate concern, but it's certainly not an insurmountable

1    one if it is because, umm, you know, my client doesn't have to

2    divulge specific names either, umm, but I -- as I said, none of

3    the case law addresses that.  I don't really see it as a

4    legitimate concern.  These are public people in public office,

5    umm, and, you know, just by nature of their positions, they're

6    subject to some scrutiny with respect to their, umm, you know,

7    on-the-job conduct at taxpayers's expense.

8              THE COURT:  All right.  Okay, we'll be issuing an

9    opinion on this.  While I have you here, are there any

10   housekeeping matters that we need to address about our case?

11             MS. LAUGHBAUM:  I'll not aware of any.  We've got

12   paper discovery in the works.  I don't think it's due yet from

13   the City so we haven't run into any issues yet.  You know, if

14   the Court is going to grant this motion, obviously we have to

15   work out a protective order.  That could involve the Court,

16   might require the Court's involvement, but hopefully not.  I'm

17   not aware of any other issues.

18             MS. BOYD:  I'm not aware of any issues either, your

19   Honor.

20             THE COURT:  Okay.  I want to look at something for a

21   minute.

22             (Pause)

23             THE COURT:  All right.  Then that concludes our

24   hearing.  Thank you.

25             (Hearing concluded at 2:44 p.m.)

```
 1                   C E R T I F I C A T E

 2

 3

 4

 5

 6

 7          I, David B. Yarbrough, Official Court

 8   Reporter, do hereby certify that the foregoing pages

 9   comprise a true and accurate transcript of the

10   proceedings taken by me in this matter on Thursday, July

11   12th, 2018.

12

13

14

15

16   11/17/2020              /s/ David B. Yarbrough

17   Date                    David B. Yarbrough,
                             (CSR, RPR, FCRR, RMR)
18                           231 W. Lafayette Blvd.
                             Detroit, MI  48226
19

20

21

22

23

24

25
```