# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: June 30, 2021

Ms. Monica NaSha Hunt
The Allen Law Group
3011 W. Grand Boulevard, Suite 2500
Detroit, MI 48202

Ms. Carol Laughbaum
Law Offices
33 Bloomfield Hills Parkway, Suite 250
Bloomfield Hills, MI 48304

Re: Case No. 20-2029, *Jane Doe v. City of Detroit, MI*
Originating Case No. : 2:18-cv-11295

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0148p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JANE DOE,

    *Plaintiff-Appellant*,

  *v.*

CITY OF DETROIT, MICHIGAN,

    *Defendant-Appellee*.

No. 20-2029

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:18-cv-11295—Mark A. Goldsmith, District Judge.

Argued: June 10, 2021

Decided and Filed: June 30, 2021

Before: GIBBONS, KETHLEDGE, and MURPHY, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Carol A. Laughbaum, STERLING ATTORNEYS AT LAW, P.C., Bloomfield Hills, Michigan, for Appellant. Monica N. Hunt, THE ALLEN LAW GROUP, P.C., Detroit, Michigan, for Appellee. **ON BRIEF:** Carol A. Laughbaum, STERLING ATTORNEYS AT LAW, P.C., Bloomfield Hills, Michigan, for Appellant. Monifa K. Gray, THE ALLEN LAW GROUP, P.C., Detroit, Michigan, for Appellee.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge. Jane Doe is transgender and began presenting publicly as a woman while working for the City of Detroit. During her transition, an unknown

city employee left Doe harassing messages that commented on her transgender identity and stated that people such as Doe should be put to death. Doe reported these incidents to the city, which took various steps to uncover the perpetrator and protect Doe's safety.

Doe sued the city under Title VII and Michigan's Elliott-Larsen Civil Rights Act, alleging that the city subjected her to a hostile work environment and then retaliated against her. The district court granted summary judgment to the city, concluding that the city responded reasonably to Doe's complaints and there were no triable issues with respect to retaliation. We affirm.

I.

Jane Doe "lived and presented as a male" when she started working for the City of Detroit in January 2016. DE 1, Compl., Page ID 2. About five months after she started work, Doe informed the city that she planned to undergo surgery to reflect her gender identity and would need time off. Doe agrees that the city was supportive of her plans to transition and need for time off.

Doe returned to work in June 2016 after the first of a series of medical procedures. Around that time, she learned from her supervisor, Nichelle Hughley, that someone had filed a complaint alleging that Doe had violated the department's dress code. Hughley told Doe that her attire was not inappropriate but declined to say who had filed the complaint. In July, Hughley told Doe that another dress code complaint had been filed but that Doe's attire was appropriate.

Doe took medical leave at the end of October 2016 for an additional surgery and returned in December. On December 14, Doe discovered that someone had defaced her office nameplate by scrawling the word "Mr." Doe immediately told Hughley and Latia Searcy, an administrative assistant, who removed, cleaned, and replaced the nameplate. Doe also emailed Raquiba Dismuke from Human Resources and Portia Roberson from the Human Rights department, telling them that "someone is attempting to harass [her] here at work." DE 39-12, 12/15/16 email, Page ID 2138. Doe received no response.

Two days later, on December 16, Doe arrived at work and found a gift bag on her desk. Doe discovered that the bag contained a phallic sex toy and a handwritten note stating:

> Deuteronoey 22:5
>
> The woman shall not wear that which Pertaineth unto a man, neither shall A men put on a womans Garment for All that Do So Are Abominton Unto the Lord thy God.
>
> You were born a Man, No make-up or weave will change that. Even getting rid of your Penis wont. Spot shaming Yourself. We don't wont People like you working Here.

DE 39-5, Gift Bag, Page ID 2115–16. Doe reported the gift bag and note to Hughley and Searcy, and Hughley told Doe to file a formal complaint with the Human Rights department. Doe went home early, and the city gathered the other employees to discuss the incidents.

After the weekend, on December 19, Doe filed a complaint with the Human Rights department describing the nameplate and gift bag incidents. She stated that she did not know who was responsible for the harassment. Hughley and Roberson were present when Doe filled out the complaint, as well as Lesa Kent, another employee with the Human Rights department. Doe requested that the city install a lock on her office door as well as a camera to help identify the perpetrator of the harassment. Hughley, Roberson, and Kent said that they would look into it and let her know.

The city asked employees to provide a handwriting sample the same day that Doe filed her complaint and told employees that the city had a zero-tolerance harassment policy that could result in termination. Kent examined the handwriting samples but was unable to conclude whether any matched the note. The city also interviewed employees in an attempt to identify the harasser, but no employees admitted to any involvement. Doe disputed the quality of the investigation, alleging that the city was "trying to keep it a secret" by failing to involve the police or building security. DE 34-4, Doe Dep., Page ID 1194.

After the office reopened in January 2017, Doe asked Hughley about the status of the investigation and the potential installation of a lock and camera. Hughley told Doe that the city was still working on it and investigating. Doe offered to pay for the lock herself, but Hughley told her that was not an option.

At the end of February, Doe received the city's report concluding that the city could not identify who had defaced her nameplate and left the gift bag. The report recommended installing a lock on Doe's office door. Doe continued to inquire about a lock and camera for the next several months, but neither were installed.

Charles Allen worked on the same floor as Doe doing accounting work for the city. Although he had a different direct supervisor, Doe and Allen worked together frequently. Doe says that they had no problems before her transition, but that Allen became "increasingly hostile" after she returned to work, including raising his voice in meetings and making disparaging remarks about Doe to coworkers. *Id*. at 1175–76. In May 2017, Doe learned from Hughley that Allen had made the dress code complaints against Doe the previous year. The city interviewed Allen after the gift bag incident, but he denied any involvement.

After the gift bag incident, nothing happened for nearly five months. On May 8, 2017, Doe found a typed note in her office mailbox reading:

> MR [Doe]
>
> LEVITICUS 20:13
>
> IF A MAN HAS SEXUAL RELATIONS WITH A MAN AS ONE DOES WITH A WOMAN, BOTH OF THEM HAVE DONE WHAT IS DETESTABLE. THEY ARE TO BE PUT TO DEATH; THEIR BLOOD WILL BE ON THEIR OWN HEADS.

DE 39-7, First Typed Note, Page ID 2122. Doe immediately reported the note to Hughley and Kent. Doe understood the note to be a threat to her life and left work early to file a police report. At this point, Doe had "some suspicions" that Allen was behind the harassment, but she did not relay those suspicions to the police or city. DE 34-4, Doe Dep., Page ID 1179.

In the wake of the note, Doe emailed Hughley and Kent to tell them that she did not feel safe returning to work and was "scared someone will attempt to hurt [her]." DE 39-15, 5/09/17-5/11/17 emails, Page ID 2146–47. Hughley directed Doe to return on May 11 and stated that her safety concerns would be addressed. Kent contacted the police on May 11 about the note, but the police told Kent that the matter should be investigated internally. On May 15, the city entered a work request for a lock to be installed on Doe's door.

Less than two weeks later, on May 22, Doe found another typed note on her office chair:

Mr. [Doe]

You were warned! Now I will show you better than I can tell you. GOD HAVE MERCY ON YOUR SOUL!

DE 39-9, Second Typed Note, Page ID 2128. Doe filed a second complaint with the Human Rights department. She also filed a complaint with the Equal Employment Opportunity Commission and the Michigan Department of Civil Rights. At this point, Doe told Hughley, Kent, Dismuke, and Roberson that she suspected Allen was the perpetrator of the harassment, but they told her there was no "hard evidence" against him. DE 34-4, Doe Dep., Page ID 1182. Doe agreed that nothing directly tied Allen to the nameplate, gift bag, or notes.

Kent interviewed Hughley and two other employees but did not interview Allen or other staff members as she had after the December incidents. Doe claims that the rest of the department's staff were not informed about the notes.

Doe asked to move offices and was temporarily relocated to an empty office on another floor. On June 14, Hughley informed Doe that locks and cameras had been installed and she could return to her original office. Doe requested to remain in the new office until the city could identify the harasser, but she received no response. Doe discovered two days later that Hughley had her things moved back to her former space.

Sometime in May or June, Kent learned from two employees in Allen's department that Allen had viewed Doe's Facebook page while in the office the previous year and had allegedly made disparaging comments. Kent could not corroborate the allegations of derogatory comments, but she concluded that Allen's behavior—viewing and discussing a colleague's Facebook page with his subordinates—was inappropriate. Allen received an unpaid three-day suspension for the incident. The city moved Allen to a different floor sometime in July, which Doe assumed was related to the Facebook incident. Allen likewise thought that the move "may have had something to do with the whole thing with [Doe]." DE 34-15, Allen Dep., Page ID 1673.

Case 2:18-cv-11295-MAG-RSW ECF No. 45-2, PageID.2596 Filed 06/30/21 Page 7 of 16
Case: 20-2029 Document: 57 Filed: 05/60/2021 Page: 7 (7 of 16)

No. 20-2029           *Doe v. City of Detroit, Mich.*           Page 6

On June 30, Kent sent Doe a letter stating that the city was unable to determine who had left the notes. Kent said that she had referred the matter to the police department for further investigation. Dissatisfied with the city's response, Doe contacted an investigative reporter, and a local news station reported on Doe's story. The police investigated the harassment at the end of July. The police never interviewed Allen, although the investigator agreed that he was the only suspect. The investigation did not uncover the identity of the harasser. Doe agrees that there have been no further incidents since May 22, 2017.

Over the same period as the harassment, Doe says that Hughley's treatment of her changed. Doe alleges that Hughley began to complain about Doe's attendance, even though Doe says that she had discussed planned medical leave with Hughley before returning to work. Hughley also denied Doe's request to keep her door closed during work hours. On January 20, 2017, Doe emailed Kent and Dismuke raising the attendance and door issues.

Doe ultimately filed a complaint about Hughley with Human Rights. Although Doe had been told that the complaint would be kept confidential, Hughley read the complaint and told Doe that she was "disappointed" and that Doe "threw her under the bus." DE 34-4, Doe Dep., Page ID 1180–81; DE 34-14, Hughley Dep., Page ID 1607; DE 40-3, 6/23/17 email, Page ID 2159.

Doe alleges that Hughley's attitude toward Doe increasingly soured after Doe filed the complaint. In addition to moving Doe back to her original office without explanation, Doe said that Hughley started nitpicking her work, insinuated that she was not doing her job, and "g[ot] on [her] about attendance issues" that included pre-approved medical leave. DE 34-4, Doe Dep., Page ID 1181, 1184. One time, Doe says that Hughley rescinded Doe's vacation time that Hughley had approved the previous day.

Hughley left the city's employment in October, and Doe decided to apply for her position. Hughley allegedly told another employee in the office that if Doe was not selected as her replacement, it was because Doe had filed complaints. But Hughley ultimately recommended to John Hill, the city's Chief Financial Officer and the sole person responsible for the hiring decision, that Anita Davis fill the position. Hill instead selected Katerli Bounds for the

position temporarily in October 2017 and hired her full-time a few months later. Doe says that she should have received the job over Bounds because of Doe's credentials and recent positive performance review.

Doe alleges that Bounds also subjected her to a retaliatory hostile work environment by, for example, stripping her of key staff, giving her poor performance reviews, and accusing her of stealing time. Doe reported the behavior to Hill, Bounds's supervisor.

The EEOC issued Doe a Right to Sue letter, and Doe sued the city under Title VII and Michigan's Elliott-Larsen Civil Rights Act alleging a hostile work environment and retaliation. The district court allowed Doe to proceed under a pseudonym. The city moved for summary judgment, arguing that it had responded reasonably to the harassment and there was no evidence of retaliation, which the district court granted. *Doe v. City of Detroit*, No. 18-11295, 2020 WL 815442, at *4, 6 (E.D. Mich. Feb. 19, 2020). The district court denied Doe's motion for reconsideration, *Doe v. City of Detroit*, No. 18-11295, 2020 WL 6146563, at *3 (E.D. Mich. Oct. 8, 2020), and Doe filed a timely notice of appeal.

## II.

Doe argues that the district court incorrectly granted summary judgment to the city on her hostile work environment claims. To prevail on that claim under Title VII, "an employee must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)). The city contested only employer liability.[1] *Doe*, 2020 WL 815442, at *4.

The standard for employer liability differs depending on whether the harassment was carried out by a supervisor or coworker. In the case of a harassing supervisor, the employer is

---

[1]Harassment on the basis of transgender identity is sex discrimination under Title VII because "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741 (2020).

vicariously liable for the hostile work environment. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 348 (6th Cir. 2005). But when committed by a coworker, the employer is liable only "if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Id.* (quoting *Hafford*, 183 F.3d at 513). To find liability, the employer's response to a coworker's harassment must "manifest[] indifference or unreasonableness in light of the facts the employer knew or should have known." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008) (quoting *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 873 (6th Cir. 1997)). An employer's response is generally adequate "if it is 'reasonably calculated to end the harassment.'" *Id.* at 340 (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999)).[2] "The appropriate corrective response will vary according to the severity and persistence of the alleged harassment." *West v. Tyson Foods, Inc.*, 374 F. App'x 624, 633 (6th Cir. 2010). "Steps that would 'establish a base level of reasonably appropriate corrective action' may include promptly initiating an investigation[,] . . . 'speaking with the specific individuals identified'" in the complaint, "following up with the complainant," and "reporting the harassment to others in management." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013) (alteration omitted) (quoting *West*, 374 F. App'x at 633).

Doe argues that the city's response to the harassment was "completely inadequate." CA6 R. 21, Appellant's Br., at 29. We look at the city's response in three phases: (1) following the nameplate and gift bag incidents in December 2016, (2) following the first typed note on May 8, 2017, and (3) following the second typed note on May 22, 2017.

The steps that the city took in response to the defaced nameplate and gift bag were reasonable. After Doe told another employee about the nameplate, the employee immediately removed, cleaned, and replaced the nameplate. *Cf. Jackson*, 191 F.3d at 663–64 (employer's actions not reasonably calculated to end racially offensive conduct where employer "was slow to eliminate racially offensive graffiti when it learned of it," and "the graffiti continued throughout the entire period of time that [the plaintiff] worked at [the company]"). After the gift bag

---

[2]Although the city never identified the person who harassed Doe, Doe asserts that Charles Allen, her coworker, was responsible. Nothing in the record suggests that a supervisor was responsible for the incidents, so Doe does not dispute that we should use the test for coworkers.

incident, the city collected handwriting samples and initiated an investigation that included employee interviews. "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." *Collette v. Stein-Mart, Inc.*, 126 F. App'x 678, 686 (6th Cir. 2005) (quoting *Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir. 2001)). "By doing so, 'the employer puts all employees on notice that it takes such allegations seriously and will not tolerate harassment in the workplace.'" *Id.* (quoting *Swenson*, 271 F.3d at 1193); *see also Newton v. Ohio Dep't of Rehab. & Corr.-Toledo Corr. Inst.*, 496 F. App'x 558, 565 (6th Cir. 2012) (employer acted reasonably when it "immediately began an internal investigation, . . . scheduled meetings with Plaintiff's supervisors to discuss the incident in detail, interviewed witnesses, including [the harasser], and prepared a separate report of its findings"); *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 749 (6th Cir. 2008) (employer acted reasonably when it "reacted immediately" to harassment complaint, "launched a two-week investigation, interviewed the parties involved, and instructed [the harasser] not to bother [the complainant]"); *Gwen v. Reg'l Transit Auth.*, 7 F. App'x 496, 502 (6th Cir. 2001) (employer "took prompt remedial action in response to [plaintiff's] complaint" by "immediately investigat[ing] the charges and suspend[ing] [the harasser]").

Although the city's investigation did not identify the perpetrator of the harassment, that does not render the city's response unreasonable. *See Zeller v. Can. Nat'l Ry. Co.*, 666 F. App'x 517, 526 (6th Cir. 2016) (although "investigation was inconclusive," employers' "conduct was far from indifferent or unreasonable, as they promptly investigated [complainant's] case"). In addition to the investigation, the city held a meeting and informed employees that it had a zero-tolerance harassment policy, steps further indicating that the city's response was reasonable. *See Colston v. Cleveland Pub. Libr.*, 522 F. App'x 332, 338 (6th Cir. 2013).

Doe argues that our decision in *Smith v. Rock-Tenn Services, Inc.*, 813 F.3d 298 (6th Cir. 2016), supports her argument that the city's response was unreasonable. In *Smith*, we held that a reasonable jury could have concluded that the employer's "total inaction for ten days" was unreasonable when the employer knew that a coworker had assaulted the plaintiff, and the employer had already warned the coworker that "further complaints would result in termination."

*Id.* at 312. Failing to take steps such as separating the two men, initiating a timely investigation, or suspending the coworker rendered the employer's "response neither prompt nor appropriate in light of what it knew or should have known regarding [the harasser's] prior misconduct." *Id.*

    *Smith* is distinguishable for two reasons. First, the case involved a known perpetrator. Here, Doe stated that she did not know who was responsible for the nameplate and gift bag incidents, so the city did not have the option to suspend or discipline a particular employee. Second, the employer in *Smith* took no action at all for a significant period of time. We have routinely held that an employer acts unreasonably when it takes no steps to address complaints of harassment. *See, e.g.*, *McCombs v. Meijer, Inc.*, 395 F.3d 346, 355 (6th Cir. 2005) (jury could conclude employer's "inaction amounted to indifference or unreasonableness" when employer failed to address complainant's concerns and subsequently transferred accused harasser to complainant's department). But here, the city immediately began an investigation, interviewed employees, took handwriting samples, and reiterated its zero-tolerance policy. It cannot be said that the city "made no effort to discover the perpetrators." *Jackson*, 191 F.3d at 663–64.

    Doe also argues that the investigation should have been more thorough, and the city was "trying to keep it a secret" by failing to involve the police or building security. DE 34-4, Doe Dep., Page ID 1194. Doe's dissatisfaction "alone is insufficient to demonstrate that [the city] did not take appropriate action." *Scarbro v. Soc. Sec. Admin.*, 841 F. App'x 928, 934 (6th Cir. 2021). Doe also argues that the city should have immediately installed locks and cameras, but "a harassment victim may not dictate an employer's action against a co-worker." *Blankenship*, 123 F.3d at 874. While taking these measures would have been reasonable, failing to do so does not render the city "so indifferent to [Doe's] concerns that it essentially permitted the harassment to continue." *Gwen*, 7 F. App'x at 502. The city took prompt remedial action in response to Doe's December complaint.

    Likewise, the city's response to the May 8 note was reasonable. Kent contacted the police three days after Doe received the note, and four days later the city submitted a work request for a lock to be installed on Doe's door. Doe does not argue that the delay of a few days was unreasonable. *See Stevens v. U.S. Postal Serv.*, 21 F. App'x 261, 264 (6th Cir. 2001) ("Under the circumstances, a three-day delay does not constitute an unreasonable failure to take

prompt corrective action."); cf. *Wyatt v. Nissan N. Am., Inc.*, No. 20-5021, 2021 WL 2177668, at *8 (6th Cir. May 28, 2021) (jury could conclude that three-week delay was unreasonable). Instead, Doe argues that the lock should have been installed following her first complaint. As we have already discussed, the city did not need to install locks and cameras to make its response to the December complaint reasonable.

Doe argues that the city could have but failed to take two additional actions after the May 8 note: following up with Allen or allowing Doe to work from home. However, Doe did not tell the city that she believed Allen was responsible for the harassment until she filed her second complaint on May 22, 2017. While Doe argues that "the City had overwhelming evidence of the identity of the harasser by early 2017," CA6 R. 21, Appellant's Br., at 31, Doe agrees that nothing tied Allen directly to the nameplate, gift bag, or May 8 note. The city was not even aware of the Facebook incident until around May or June 2017—after Doe received both notes— and it promptly disciplined him when it learned of what happened. Additionally, although Allen made two dress code complaints against Doe, those occurred nearly a year earlier and do not prove that Allen was the perpetrator of the harassment.

Further, on this record, it was not unreasonable for the city to require Doe to return to the office. Nothing in the record indicates that Doe's job was capable of remote performance. And the city took steps to address the harassment. Although these steps were ultimately unsuccessful in preventing the final act of harassment—the note on May 22—the city did not "exhibit[] indifference rising to an attitude of permissiveness that amounted to discrimination." *Jackson*, 191 F.3d at 666.

Doe filed another complaint shortly after discovering the May 22 note, and the city initiated another investigation. Unlike the first investigation, neither the city nor the police spoke with Allen, even after Doe identified him as the likely perpetrator. An inadequate investigation may render an employer's response unreasonable. *See, e.g.*, *Hafford*, 183 F.3d at 514 ("[A] factfinder could conclude that the employer's response did not constitute 'prompt and appropriate corrective action'" in part because "after [the complainant] identified the callers no investigation was made of the identified individuals." (citation omitted)). But the city also temporarily relocated Doe at her request to a different floor until locks and security cameras

could be installed. And the city moved Allen to another floor shortly thereafter, which both Doe and Allen assumed had something to do with the Facebook incident. *See Harris v. Sodders*, No. 07-4398, 2009 WL 331633, at *2 (6th Cir. Feb. 11, 2009) (employer's actions appropriate in part because "[e]ven though [employer] was unaware of the alleged harassment, his decision to transfer [the harasser] had the inadvertent effect of stopping the harassment"). Doe agrees that there have been no further incidents since May 22, 2017. If Allen was indeed responsible for these incidents, it appears that moving him, disciplining him, and installing locks and cameras effectively ended the harassment. *See Mullins*, 291 F. App'x at 749. These efforts did not "manifest[] indifference or unreasonableness in light of the facts the employer knew or should have known," so "we cannot say that the employer has itself committed an act of discrimination." *Blankenship*, 123 F.3d at 873.

Summary judgment was also proper as to Doe's hostile work environment claim under Michigan's Elliott-Larsen Act because that standard "is identical to Title VII's analysis." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468 (6th Cir. 2012).

III.

Doe next argues that the district court incorrectly granted summary judgment to the city on her retaliation claims. Doe says that she was subjected to an adverse employment action and retaliatory harassment because she filed hostile work environment complaints. The only adverse employment action that Doe identifies is the city's failure to promote her to Hughley's position after Hughley's departure. Failing to promote an employee qualifies as an adverse employment action. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). It is not clear whether Doe believes that the adverse action occurred when Bounds received the initial interim appointment in October 2017 or the permanent position in May 2018. Either way, the record does not support any causal connection between Doe's complaints and her failure to receive Hughley's job.

Doe points to Hughley's alleged statement that if Doe was not selected as her replacement, it was because Doe had filed complaints. But Doe does not dispute that Hill was solely responsible for determining Hughley's replacement, and Doe does not identify any statement from Hill that could lead a factfinder to believe that he promoted Bounds over Doe in

Case 2:18-cv-11295-MAG-RSW ECF No. 45-2, PageID.2630 Filed 06/30/21 Page 14 of 16
Case: 20-2029   Document: 45   Filed: 06/30/2021   Page: 14 of 16

No. 20-2029                        *Doe v. City of Detroit, Mich.*                        Page 13

retaliation for Doe's complaints. It is also undisputed that the employee that Hughley recommended for the position—Anita Davis—also did not receive the job.

Doe offers her belief that she was denied the promotion because of her complaints. But merely identifying her belief that Hill acted improperly without supplying any evidence is insufficient to survive summary judgment. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action."). Nor does any temporal proximity support Doe's argument, as more than five months had passed between the time Doe filed her second complaint and the October 2017 interim appointment. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."); *Hafford*, 183 F.3d at 515 ("[B]ecause the disciplinary actions occurred two to five months after [the plaintiff] filed charges, and are fairly evenly spread over a period of time, the inference of a causal connection based on temporal proximity alone is tenuous. Absent additional evidence, this loose temporal proximity is insufficient to create a triable issue." (internal quotation marks removed)).

Doe also argues that Hughley and Bounds subjected her to retaliatory harassment, but these allegations similarly lack any evidence that they were related to Doe's hostile work environment complaints. Doe merely cited her belief that her relationship with Hughley and Bounds was poor because of her complaints, stating that there was simply "no other explanation for the source of her treatment." DE 34-4, Doe Dep., Page ID 1196, 1198. Without more, that speculation is insufficient to survive summary judgment.

For the same reason, summary judgment was proper on Doe's retaliation claim under Michigan's Elliott-Larsen Act, which requires proof of causation. *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 488–89 (6th Cir. 2020).

## IV.

We affirm the grant of summary judgment to the city on Doe's Title VII and Michigan law claims because she cannot demonstrate that the city failed to reasonably respond to her harassment complaints or that the city retaliated against her.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 20-2029

JANE DOE,

    Plaintiff - Appellant,

v.

CITY OF DETROIT, MICHIGAN,

    Defendant - Appellee.

**FILED**
Jun 30, 2021
DEBORAH S. HUNT, Clerk

Before: GIBBONS, KETHLEDGE, and MURPHY, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's grant of summary judgment in favor of the City of Detroit is AFFIRMED in its entirety.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk